# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: August 25, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| MICHAEL CANNON, Jr., | * | |
| *Personal Representative of the* | * | |
| ESTATE OF KATIE CANNON | * | |
| | * | |
| Petitioner, | * | No. 20-1586V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Final Attorneys Fees and Costs; |
| AND HUMAN SERVICES, | * | Reduction in Attorneys Fees; |
| | * | Medical Records. |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

*Scott William Rooney,* Nemes, Rooney P.C., Farmington Hills, MI, for petitioner.
*Emily H. Manoso,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On February 2, 2023, Michael Cannon Jr., ("petitioner") on behalf of the estate of Katie Cannon, filed as motion for attorneys' fees and costs.[2] Petitioner's Motion for Attorneys' Fees ("Fees App.") (ECF No. 78). On July 18, 2023, petitioner filed a second supplemental motion. Supp. Fees App. (ECF No. 84). For the reasons discussed below, the undersigned **GRANTS** petitioner's motion for final attorneys' fees and costs and awards a total of **$27,829.50 in attorneys' fees, and $1,926.54 in petitioner's costs.**

## I.     Procedural History

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this decision contains a reasoned explanation for the action in this case, I am required to post it to a publicly available website. This decision will appear at https://www.govinfo.gov/app/collection/uscourts/national/cofc or on the Court of Federal Claims website. **This means the decision will be available to anyone with access to the Internet.** Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

On November 13, 2020, Michael Cannon Jr., on behalf of the estate of Katie Cannon ("decedent"), filed a petition in the National Vaccine Injury Compensation Program. Petition (ECF No. 1). Petitioner alleged that as a result of receiving the Hepatitis A vaccination, ("Hep A") on November 9, 2017, decedent suffered vaccine-induced chronic inflammatory demyelinating polyneuropathy ("CIDP"). *Id.* Petitioner alleges the decedent continued to suffer from CIDP until her death on October 29, 2020. *Id.*

On December 1, 2020, petitioner filed decedent's death certificate, vaccine record, and various medical records. Petitioner's Exhibit ("Pet. Ex.") 1-10. (ECF Nos. 6, 8, 10). On March 1, 2021, petitioner filed additional medical records. Pet. Ex. 11. (ECF No. 13). On March 2, 2021, petitioner filed an email exchange from her medical provider via the "Administrative Office," advising petitioner that she possibly had an "autoimmune…reaction to the vaccine…Anti GAD to be off the wall…. DON'T DO ANY OTHER VACCINES WITH THIS KNOWLEDGE." Pet. Ex. 12 (ECF No. 14).

On March 3, 2021, petitioner filed an affidavit of Randy Manning, the decedent's mother, detailing decedent's symptoms after vaccination and her subsequent decline. Pet. Ex. 13 (ECF No. 17). On April 13, 2021, petitioner filed additional medical records from Henry Ford Health System. Pet. Ex. 14 (ECF No. 19). On June 22, 2021, petitioner filed additional medical records from Dr. Nancy T. Sabal, petitioner's family physician. Pet. Ex. 15 (ECF No. 23).

This case was reassigned to my chambers on January 12, 2022. *See* Notice of Reassignment (ECF No. 29). On March 14, 2022, respondent filed a status report, noting a "significant gap in time between the last filed medical record and Ms. Cannon's death" and requested updated medical records. Respondent's ("Resp.") Report at 2 (ECF No. 32). The same day, I ordered petitioner to file medical records identified in respondent's report. On June 10, 2022, petitioner filed additional medical records from the Michigan Institute for Neurological Disorders ("M.I.N.D"). Pet. Ex. 16 (ECF No. 37). On July 5, 2022, petitioner filed additional medical records from Henry Ford Kingwood Hospital. Pet. Ex. 17-20 (ECF No. 39). Petitioner filed a statement of completion on July 6, 2022, stating that all of the medical records had been filed. (ECF No. 41).

On August 18, 2022, I held a status conference to discuss the importance of pointing to a solid diagnosis in the Vaccine Program before beginning the causation analysis. (ECF No. 43). I recommended that petitioner focus on decedent's neurological symptoms directly following vaccination, rather than her ultimate death. *Id.* at 2. I ordered respondent to file a status report within thirty days indicating all outstanding medical records significant to the claim and indicating whether respondent is amenable to discussing settlement. *Id.* at 3. In the event respondent was unwilling to settle, I ordered petitioner to file additional medical records and a statement of completion within thirty days of respondent's reply, and an expert report addressing diagnosis and vaccine causation within sixty days of the filing of the statement of completion. *Id.*

On September 15, 2022, respondent filed a status report stating that her client was not amendable to discussing settlement at this time because petitioner had failed to file outstanding medical records respondent had requested on March 14, 2022. (ECF No. 44). On September 28,

2022, petitioner filed decedent's worker's compensation file. Pet. Ex. 21 (ECF No. 46). As the vaccination had been administered as part of her work at the Henry Ford Medical System.

On October 5, 2022, I convened a lengthy status conference to review the extensive status report filed by respondent listing potentially missing records in this case. I stressed the importance of obtaining all of the records and to focus on Ms. Cannon's claimed neurological disease as opposed to her cause of death which was listed as liver failure. (ECF No. 48). Mr. Rooney agreed that this was not a death case and indicated that he had recently obtained some additional records which he will file. *Id*. However, it was apparent that there appeared to a potentially large number of records that had not yet been filed. *Id*. I ordered both parties to file separate status reports on the progress of obtaining additional medical records within thirty days. *Id*. I also indicated that I would grant subpoenas to both parties if requested in order to obtain the complete medical and workers compensation file.

On October 24, 2022, respondent filed four Motions to Issue Subpoenas for medical records and petitioner's complete worker's compensation file. (ECF Nos. 49-52). I granted respondent's motions the following day. (ECF Nos. 53-56). On November 4, 2022, respondent filed a status report, indicating he had served the authorized subpoenas to the offices of Dr. Nancy T. Sabal, D.O.; Henry Ford Wyandotte Family Practice; and Henry Ford Hospital and had filed medical records received pursuant to the subpoenas. (ECF Nos. 57-60). On the same day, petitioner's counsel filed a status report indicating petitioner had filed decedent's worker's compensation records and medical records from 2014 and was working on obtaining additional information from the decedent's mother a well as obtaining explanation of benefits ("EOBs") and authorizations from the decedent's insurance carrier. (ECF No. 61)

On November 17, 2022, I ordered both parties to file separate status reports on the progress of obtaining additional medical records. On December 2, 2022, respondent filed records from Henry Ford Hospital via Portable Storge Disc. Resp. Ex. D-G. (ECF Nos. 62, 65). On the same day, petitioner's counsel filed records from Henry Ford Hospital. Pet. Ex. 22 (ECF No. 63). On December 7, 2022, respondent filed a status report indicating "respondent's Exhibits A through G contain complete copies of all of the records he has received pursuant to subpoena in the above-captioned case." (ECF No. 65). The response to respondent's subpoenas produced 14,269 pages of medical records and 16,549 pages of workers compensation records. *Id*. Respondent agreed that a large part of the workers compensation records consisted of medical records and thus were likely duplicative of the medical records. However, it was apparent that the subpoenas issued by respondent produced significantly more records than had been produced the late stage of the case when the were filed. The petitioner filed an additional 463 pages of records from Dr. Nancy Sabol, the decedent's family doctor also at this late stage. Pet. Ex. 22 (ECF No. 63). Additionally, on December 13, 2022, petitioner's counsel filed additional medical records from M.I.N.D. Pet. Ex 23 (ECF No. 67).

On December 19, 2022, I convened a status conference and ordered petitioner to file a status report indicating whether he intended to move forward with the case or, in the alternative to file a motion to voluntarily dismiss in light of the complexity and uncertainty as to the diagnosis in this case. (ECF No. 69). On January 19, 2023, petitioner filed a status report indicating petitioner's intention to voluntarily dismiss the claim. (ECF No. 70). On January 20,

3

2023, I filed a Decision Dismissing Petition. Dismissal Decision (ECF No. 71). On the same day, petitioner filed a Joint Notice Not to Seek Review. (ECF No. 72). On January 26, 2023, I entered a judgment, pursuant to Vaccine Rule 11(a), dismissing the case for insufficient proof. (ECF No. 73).

On February 2, 2023, petitioner's counsel filed a Motion for Attorney's Fees and Costs. Fees App. Petitioner requested compensation in the total amount of $49,271.14 representing $48,806.00 in attorneys' fees and $465.14 in costs incurred by counsel. *Id*. at 3. Petitioner's counsel additionally requested $2,961.36 in costs incurred for the probate of petitioner's estate. *Id*. Finally, petitioner requested $1,926.54 representing costs incurred by petitioner, Michael Cannon, for the retrieval of the decedents medical records. *Id*. at 1.

On March 2, 2023, respondent filed a response to petitioner's Motion for Attorney's Fees and Costs arguing petitioner has not met his burden of affirmatively demonstrating "there is more than a scintilla of objective evidence in the record in this case establishing a reasonable basis for his claim." Resp. Response at 41. (ECF No. 82). Respondent argues any reasonable basis that may have existing at the time petitioner filed the claim was, "lost early during its pendency" and that fees and costs are not appropriate in this case. *Id*. Respondent also submits that reasonable costs, probate fees, not associated with the Vaccine Program tasks should not be awarded. *Id*.

On March 9, 2023, petitioner filed a reply to respondent's response to the Motion for Attorney's Fees and Costs, arguing that, despite the decedent's medical complications related to the cirrhosis of the liver diagnosed in 2019, reasonable basis that her Hep. A vaccination caused neurological injury nevertheless existed from November 2017 until her passing. Pet. Reply at 10. (ECF No. 83). Petitioner further agues that the fees for probate of the petitioner's estate were necessarily incurred in order to secure the appointment of her husband as the administrator of the estate in order to enable him to authorize representation and obtain the necessary medical records and therefore should be compensable in this case. *Id*. at 3. Petitioner filed a supplemental motion for Attorneys' Fees and Costs on July 18, 2023, clarifying the amount incurred for medical record costs. Supp. Fees App. (ECF No. 84).

This matter is now ripe for adjudication.

## II. General Legal Standard

Under the Vaccine Act, the special master may award reasonable attorneys' fees and costs for a petition that does not result in an award of compensation but was filed in good faith and supported by a reasonable basis. § 300aa–15(e)(1). Whether a claim was brought in good faith and whether reasonable basis existed are two distinct inquiries. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).

### A. Good Faith

Petitioner is entitled to a presumption of good faith as is the government. *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996).  Without evidence of bad faith,

4

"petitioners are entitled to a presumption of good faith." *Grice,* 36 Fed. Cl. at 121. Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5. The good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believe he had a legitimate claim for compensation." *Turner,* 2007 WL 4410030, at *5. Black's Law Dictionary explains that bad faith involves conduct indicating "dishonesty or belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019).

### B. Reasonable Basis

Unlike a demonstration of good faith, reasonable basis must be demonstrated through an objective evidentiary showing. *See Chuisano v. Sec'y of Health & Human Servs.,* 116 Fed. Cl. 276, 286 (2014). The Court of Federal Claims has held that the objective reasonable basis inquiry is determined by "totality of the circumstances." *E.g.*, *McKellar v. Sec'y Health & Human Servs.,* 101 Fed.Cl. 297, 303 (Fed.Cl.2011) (citing *Hamrick,* 2007 WL 4793152 at *4).

The objective reasonable basis inquiry turns around the "feasibility of the claim" at hand, rather than the likelihood of its success. *Id*. at 6. The evidentiary standard that must be met to satisfy a reasonable basis inquiry is "more than a mere scintilla but less than a preponderance of proof." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Reasonable basis may cease to exist as further evidence is introduced. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Once a reasonable basis ceases to exist, petitioner's counsel has an obligation to voluntarily dismiss the claim. *Cottingham,* 134 Fed. Cl. 567, 574 (2017).

Prior cases in the Program have held that petitioner's own statements do not constitute objective evidence, and therefore are insufficient on their own to establish reasonable basis. *See, e.g.*, *Chusiano*, 116 Fed. Cl. At 291 (holding petitioner's affidavit alone was insufficient to establish reasonable basis); *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018) (holding reasonable basis existed where counsel relied *not* on statements made by the petitioner but on "actual objective record proof") (emphasis added). Rather, when considering reasonable basis, medical records, affidavits, and sworn testimony may be considered objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). Special masters have found reasonable basis has been demonstrated absent medical records or opinions supporting vaccine causation. *See Austin v. Sec'y Health & Human Servs.,* No. 10–362V, 2013 WL 659574, *8 (Fed.Cl.Spec.Mstr. Jan. 31, 2013) (citing *Hamrick,* 2007 WL 4793152, at *7); *Lamar v. Sec'y Health & Human Servs.,* No. 99–583V, 2008 WL 3845165, *4 (Fed.Cl.Spec.Mstr. July 30, 2008).

### III.  Discussion

#### A. Petitioner's Arguments

5

Petitioner argues that "petitioner's case was brought in good faith and with a reasonable basis," and that "petitioner is entitled to all of the fees and costs asserted even though Petitioner suffered from multiple diagnoses." Pet. Reply at 3. Further that "Katie Cannon was not suffering any adverse medical conditions before she received the Hep A vaccination, other than irritable bowel syndrome and several knee surgeries." *Id*. at 3-4. Petitioner argues, with some support from contemporaneous medical records, that Ms. Cannon's health took a significant turn for the worse shortly after receipt of the Hep A vaccine and that multiple autoimmune diagnoses were under active consideration by treating physicians. *Id*. Indeed, Ms. Cannon was tested for numerous autoantibodies and was positive for many including anti-Gad 65. Pet. Ex. 16 at 88. Petitioner argues that respondent "equates the standard for reasonable basis in proceeding with that of entitlement…by alleging that Petitioner failed to offer objective evidence as to how the Hep A vaccination could cause demyelination at the Petitioner's filing date. This is an argument for an entitlement case, not on the issues of reasonable basis to proceed." Pet. Reply at 8.

Counsel was retained initially by Ms. Katie Cannon in 2018 to "investigate a claim on her behalf related to injuries she sustained due to the receipt of the Influenza Quad vaccination on September 5, 2017, and Hepatitis A vaccine on November 9, 2017," and that "petitioner and her counsel started ordering medical records." Fees App. at 1, 2. He explained that Mrs. Cannon "passed away during the pendency of the matter and a probate estate was needed to be opened, and as such, probate costs were incurred in order to have her widower, Michael Cannon, Jr., appointed as Personal representative." *Id*.

Petitioner argues that "at the time of filing the Petition and at all times relevant thereafter there existed a good faith, reasonable basis to contend that the petitioner, Katie (Manning) Cannon, sustained an injury from the vaccinations she received." *Id*. at 3. Petitioner points to the decedents death certificate which listed "reaction to hepatitis (A) vaccine," and "that was not the reasonable basis petitioner relied upon to file the actual, rather it was a fact of the public record." *Id*. at 2.

Petitioner noted that the fees requested "are based upon rates previously approved in the Program throughout the course of this litigation and varied by year as reflected in the attached list of fees and costs." *Id*. Petitioner noted that in a proceeding "where a decedent is involved, the Estate must be opened and a Personal Representative named who can then act on behalf of the Estate of the Deceased." Pet. Reply at 2. For that reason petitioner hired Attorney Thomas Nemes, who "practices probate law and the Estate was required to be opened and maintained throughout the litigation…[and his] fees are reasonable in the community in which he practices and less than traditionally billed for such work." *Id*. Petitioner noted that "the Letters of Authority needed to be renewed twice since Katie Cannon passed away. Without renewal of the Letters of Authority no claim could continue and no medical records obtained." Pet. Reply at 3.

Respondent raised multiple arguments about some of the varied medical conditions afflicting Ms. Cannon such as pointing to a complaint of numbness in the right shin in July 2017. Resp. Ex. A at 55. Petitioner agrees that this symptom may have been secondary to a prior leg injury knee surgery, but also notes that at the same time the records documented bilateral clawing of her hands which could not have been attributable to the condition of her knee. Pet. Reply at 5. Petitioner also points to decedents December 2017 visit, more than a month after the

6

Hepatitis A vaccination when she "had 'no feeling' in both hands, atrophy and contractions in both hands, 'extreme pain' in both feet, numbness on the bottom of both feet, poor balance, and weakness of the left arm and leg." Pet. Reply at 4.

Further, from "January 2018 through July 2019, Katie's treatment continued to include IVIG, steroids and plasmapheresis." Pet. Reply at 6. Decedent was diagnosed with "autoimmune activated post-Hep A Vaccination," in September 2018. Pet. Reply at 6. Decedent was diagnosed with CIDP in 2019 by Dr. Pawlak, further supporting reasonable basis. *Id*. Randy Manning, the decedent's mother also notes that her daughter had stiff person syndrome or CIDP in her affidavit and petitioner argues that "the affidavit is solely for the purpose of documenting the numerous medical conditions Petitioner developed after the November Hep A Vaccination." *Id*. at 7-8.

Petitioner argues that "there exists no standard under the Program nor the case law that requires a certain number of providers/treaters to agree on the diagnosis in order that Petitioner may recover." Pet Reply at 7. Further, "nothing within the Vaccine Program requires that the Petitioner offer in the Petition how the vaccination causes the condition complained of nor does such preclude the Petitioner from seeking to include an 'exacerbation' claim at a later point, this is a topic for expert reports and literature." *Id*. at 8.

Petitioner concedes that the decedent "had cirrhosis, however, it is equally indisputable that Petitioner's primary medical difficulties, that being numbness and parathesis did not develop until a short time after she received the Hep A [vaccination]." *Id*. Further, petitioner argues that petitioner's gastroenterologist/hepatologist Dr. Singh noted during a December 2019 visit that "I question if her other neurological symptoms may have been due to complications related to alcoholic neuropathy all along," petitioner argues that "he did not conclude that the Petitioner's neuropathy, that began in November 2017 were related to alcoholic neuropathy, merely whether the condition she was presenting with in December 2019 were related to the same." Pet. Reply at 9-10. Further, petitioner argues that "it is possible that petitioner's cirrhosis could have been due to something other than alcohol, such as longstanding IVIG treatment." *Id*. at 10.

## IV. Respondent's Argument

Respondent argues the totality of the circumstances do not show reasonable basis with respect to decedent's alleged CIDP diagnosis and injury. Resp. Response at 25. Respondent proposes three separate but related arguments to show a lack of reasonable basis. First, respondent claims that the CIDP diagnosis petitioner alleges was not substantiated by sufficient objective evidence. Second, respondent argues that decedent's conditions preceded her vaccination, which further negates a finding of reasonable basis. *Id.* at 30. Third, respondent argues that there is ample evidence of an alternative cause to decedent's injuries and that the evidence indicates petitioner knew or should have known of the issues regarding lack of evidence, conditions preceding vaccination, and alternative causes. *Id.* at 32.

Respondent contends that there was insufficient objective evidence of CIDP considering that decedent never acquired an expert report, and only medical records obtained from M.I.N.D discuss the possibility of vaccine related CIDP. *Id.* at 29.

7

Respondent next argued that decedent's conditions preceded her vaccination. *Id*. at 30. Respondent argues that decedent was being treated for 'intense burning pain' in her right leg one week before her flu vaccination, and more than two months before her Hepatitis A vaccination. *Id*. at 31. Respondent also argues decedent was being treated by a physical therapist prior to her Hepatitis vaccination. *Id*. Respondent argues that there was objective evidence in the year before decedent's case was filed that decedent's neurological and liver symptoms preceded vaccination. *Id*.

Respondent's lastly argued that there is ample evidence of alternative cause of decedent's injuries and that the evidence indicates petitioner knew or should have known of the aforementioned issues regarding lack of evidence, conditions preceding vaccination, and alternative causes. *Id*. at 32. Respondent argues that a year before this case was filed, decedent's hematologist expressed concerns regarding decedent's alcohol use, and diagnosed decedent with alcoholic cirrhosis. *Id.* at 33. Respondent also argues that Dr. Singh opined "other neurologic symptoms may have been due to complications related to alcoholic neuropathy all along." Resp. Ex. C at 4827. Respondent claims that the medical records substantiate its assumption that decedent did not die from her alleged vaccine injury CIDP.

### A. Good Faith

The Vaccine Act permits attorney's fees and costs "incurred in any proceeding on" an unsuccessful "petition filed under section 300aa-11, if that "petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." § 300aa15I (1).

In this case, petitioner agreed to voluntarily dismiss this case to avoid expending court resources in further proceedings. Respondent does not argue that petitioner lacked good faith when she brought her initial claim. Resp. Response. Accordingly, I find that petitioner has demonstrated a subjective belief that she had a legitimate claim to compensation, satisfying the good faith standard.

### B. Reasonable Basis

I find petitioner had a reasonable basis to bring this claim up until the time it was dismissed. Petitioner presented well more than a mere scintilla of objective evidence in the form of medical records documenting the possibility of vaccine related CIDP, satisfying the reasonable basis standard. When petitioner believed reasonable basis ceased to exist, he dismissed the case.

Respondent's first argument regarding a lack of objective evidence supporting a diagnosis of CIDP fails to note Dr. Pawlak diagnosed decedent with CIDP in 2019. Pet. Ex. 7 at 1. The fact that only one physician on record diagnosed decedent with CIDP is not dispositive in a reasonable basis inquiry, as the Federal Circuit has previously held that "absence of an express medical opinion on causation" is not necessarily an indication of a lack of reasonable basis. *See James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021);

8

(citing *Cottingham*, 971 F.3d at 1346). Ms. Cannon underwent extensive medical testing, had at least one diagnosis of CIDP, had multiple positive autoantibodies, and was prescribed IVIG by her treating physicians. There is no requirement in the program that a petitioner have more than one physician diagnosing an autoimmune condition that could be vaccine related in order to establish reasonable basis.

In arguing that decedent's conditions preceded her vaccination, respondent fails to account for decedent's ankle surgery, meniscal repairs and ACL repairs prior to her vaccination that quite plausibly gave rise to the left leg pain. Resp. Response at 30; Pet. Reply at 5. Decedent's diagnostic testing revealed no evidence of peripheral neuropathy at the time she experienced the extremity pain to which respondent refers. *Id.* Decedent first experienced subacute onset of parathesis in November 2017 and at that time tested positive for GAD65 antibodies. Pet. Ex. 7 at 11, 12. Therefore, it is reasonable for petitioner and counsel to believe decedent's neurological injury did not precede her vaccination in this case.

Respondent's third argument does not address the assertions made by petitioner's counsel, and this Court, that this was not a death case, and was rather a case focused on her development of CIDP because of the Hepatitis A vaccination. This was first discussed in a status conference on August 18, 2022. (ECF No. 43; Scheduling Order at 3). This argument was acknowledged by both this Court and petitioner's counsel in a subsequent scheduling order. (ECF No. 69; Scheduling Order at 2). In fact, in Respondent's reply to Petitioner's Fees and Costs Application, respondent states, "Indeed, the Court advised in a previous Order, and petitioner agreed, "that this is not a death case." *Id.* at 2. Ms. Cannon's death certificate states that her cause of death was liver failure, cirrhosis of the liver, and "reaction to hepatitis B vaccine." Pet. Ex. 1 at 1.

Respondent's argument that there was ample evidence that vaccination did not cause her death is immaterial in the reasonable basis analysis, as the parties have acknowledged this point on more than one occasion. *Id.* Respondent's contention that there are alternative causes of decedent's death only addresses petitioner's initial claim made when the petition was initially filed the case and does not refute the amended argument that petitioner's CIDP, not death, was caused by her Hepatitis A vaccination. It is noted that petitioner was advised to and should have filed an amended petition to so assert his claim. However, he did not.

However, Respondent's contention that petitioner's counsel impermissibly delayed the dismissal of this case by filing incomplete medical records is recognized by this Court. Resp Response at 36. On numerous occasions, petitioner's counsel was ordered to obtain medical records that respondent had identified as outstanding and necessary to the development of the case. (ECF Nos. 33, 43). Petitioner's counsel indicated he had properly obtained medical records in compliance with this Courts orders, despite the fact that numerous medical records remained outstanding. (ECF No. 41). When petitioner's counsel was unable to obtain the requested Worker's Compensation Records and medical records from Nancy T Sabal, D.O., and HFHS Wyandotte, respondent filed a Motion to Issue subpoena on these parties which I granted.

It is rare in this Program for respondent's counsel to have to issue subpoenas to obtain complete medical records in order to properly evaluate the petitioner's claim. In this case it is difficult to accept that petitioner's counsel, an experienced attorney in and outside of this

9

program, did not understand that the records he had obtained were woefully incomplete given the extensive diagnostic workups, hospitalizations, and treatments the decedent received. In fact, in part judging from the relatively miniscule receipts for medical records paid for by Mr. Rooney's firm and the significantly larger amount paid by Mr. Cannon, it appears to me that Mr. Rooney had the client request the records from the medical facilities. *See* Fees App. at 1.

Mr. Rooney should have known from years of experience that medical facilities, while often charging less to patients, rarely produce complete medical records when requested by the patient or the patient's family. It is only when the records are requested and paid for by counsel that complete sets are produced. Given that over 14,000 pages of medical records were produced in response to the respondent's subpoenas, many pages of which had not been previously produced, it is apparent to me that counsel did not diligently develop this case. Had he properly prepared this case by obtaining all of Ms. Cannon's medical records and reviewing them carefully it is likely that the ultimate conclusion could have been reached much sooner. The court, in preparation for several status conferences, had devoted a significant amount of time in reading and evaluating what turned out to be grossly incomplete records and it was only through the diligent work of respondent's counsel that the missing records were identified, and complete records obtained.

While I find that there was reasonable basis to file and develop the claim based upon the symptoms, diagnoses, and treatment received by the petitioner and the apparent conclusion of at least some of her treating physicians that she suffered from an autoimmune disease, I also find that counsel failed to diligently investigate and develop the claim that he filed as evidenced by the substantially incomplete filing of medical records. While he asserted that he requested the records and filed what the facilities provided, it is apparent to me that he most likely had his client request and pay for records resulting in grossly incomplete filings. This required the diligent work of respondent's counsel to identify and obtain all of the records necessary to properly evaluate the claim.

Petitioner is therefore entitled to an award of reasonable attorneys' fees and costs, but I have concluded that a reduction in fees by 50% is justified because of counsel's demonstrated lack of diligence in handling this case.

## V.     Reasonable Attorneys' Fees

Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). Adequate proof of the claimed fees and costs should be presented when the motion is filed. Id. at 484 n. 1. Special masters are given substantial discretion in determining if a petitioner's request is reasonable to achieve a "rough justice." *See Fox v. Vice*, 563 U.S. 826, 838 (2011). The special master may reduce awards sua sponte, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313 (Fed. Cl. 2008), aff'd No. 99–537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

### A. Probate of Decedent's Estate

Petitioner's counsel requests $2,961.36 in attorneys' fees for services performed in relation to the probate of decedent's estate. Fees. App. at 3. Respondent argues that petitioner's counsel billed for activities that fall outside of the scope of compensable work in the Vaccine Program, namely the work petitioner's counsel did to assist petitioner in probating the decedent's estate. Resp. Rep. at 37. Respondent argues that petitioner's counsel billed for "routine administrative tasks unrelated to the Vaccine Program" which are thus non-compensable. Resp. Response at 41. Respondent further argues that costs incurred "without court or respondent involvement" are generally not compensable in the Vaccine Program. Resp. Rep. at 40 (citing *Ceballos v. Sec. Health & Hum. Servs,* no. 99-97V, 2004 WL 784910, at *20 (Fed. C. Spec. Mstr. Mar. 24, 2004).

Respondent misunderstands the need for probate of a decedent's estate in order for her claim to proceed in the Vaccine Program. The executor or administrator of a decedent's estate must obtain authorization from the Register of Wills, or similarly named office, in the county of the decedent's domicile at the time of her death in order to have the authority to assert a claim in court, to obtain medical records, to retain counsel and perform other functions essential to a Vaccine Program case. Accordingly, the need for the services of a probate attorney were necessary as a pre-requisite to Mr. Cannon's authority to bring a claim in this court. Such costs are compensable under the act when they are an "essential prerequisite condition" to obtaining an award that must "be fulfilled in order for [the] award to be made." *See Bennett. V. Sec. Health & Hum. Serv's*, no. 99-97V, 2017 WL 3816094, at *3 (Fed. C. Spec. Mstr. Aug. 7, 2017) (quoting *Haber ex rel. Haber v. Sec'y of Health & Human Servs.*, No. 09–458V, 2011 WL 839111, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011)).

The probate of decedent's estate was a prerequisite to filing a case in the Program in which an award can be made and was thus "incurred in any proceeding on [a Vaccine Act] petition." § 15(e)(1). The amount charge by probate counsel was reasonable. I therefore find it appropriate to award the requested $2,961.36 to petitioner's counsel for the work performed in relation to the probation of decedent's estate.

### B. Reduction in Attorneys' Fees

Petitioner requests a total of $48,806.00 in attorneys' fees. Petitioner requests reimbursement for counsel Scott W. Rooney and a paralegal at the following hourly rates:

| Year | Mr. Rooney | Paralegal |
|---|---|---|
| 2018 | $300.00 | $60.00 |
| 2019 | $350.00 | $60.00 |
| 2020 | $350.00 | $60.00 |
| 2021 | $400.00 | $60.00 |
| 2022 | $400.00 | $60.00 |
| 2023 | $400.00 | $60.00 |

11

Petitioner's proposed rates are consistent with the Office of Special Masters' Attorneys' Forum Rate Fee Schedule and the range set forth by this Court in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). These rates are also consistent with previous fee decisions awarding forum rates for Scott Rooney, P.C. *See, e.g.*, *Thomas v. Sec'y of Health & Hum. Servs.*, 2018 WL 5725184, at *2 (Fed. Cl., 2018); *Voors v. Sec'y of Health & Human Servs*, No. 17-024V, 2017 WL 6892228, at *1 (Fed. Cl. Spec. Mstr. Nov. 15, 2017); *See Austin* v. *Sec'y of Health & Hum. Servs.,* No. 20-50V, 2021 WL 5080044, (Fed. Cl. Spec. Mstr. October 6, 2021); *Heil* v. *Sec'y of Health & Hum. Servs.,* No. 19-0109V, 2022 WL 3639431, (Fed. Cl. Spec. Mstr. July 22, 2022); and *Schweder* v. *Sec'y of Health & Hum. Servs.,* No. 20-1077V, 2022 WL 4078659, (Fed. Cl. Spec. Mstr. Aug. 4, 2022); *Bedogne v. Sec'y of Health & Hum. Servs.,* No. 21-0803V, 2022 WL 17851886, at *2 (Fed. Cl. Dec. 2, 2022)

While the rates charged are reasonable, because of counsel's lack of diligence in developing this case there was a substantial delay in determining the diagnosis and likely proximate cause of decedent's illness. As noted above it required the diligent work of respondent's counsel to obtain the medical records that enabled a more complete understanding of this case. A substantial portion of the medical records containing information essential to understanding the diagnoses and causation was largely filed by respondent's counsel in this case, rather than petitioner— most notably, information regarding petitioner's IVIG treatment and diagnosis of alcoholic cirrhosis. *See* Resp. Ex. C. at 4287.

Furthermore, even though this Court advised petitioner on multiple occasions that this case ought to be about the role, if any, the vaccination played in the causation of decedent's CIDP rather than her death, petitioner's counsel neglected to file an amended petition. *See e.g.*, Scheduling Order at 3 (ECF No. 43) although he did agree in status conferences that this case was not a death case but was more properly one about the potential diagnosis and cause of an autoimmune disease that may have caused harm and disability but did not result in death. Under the circumstances I will accept that acknowledgment as an oral amendment of the petition.

Petitioner's counsel has been active in this Program for years. He knew, or should have known, that filing substantially incomplete medical records could result in a significant delay of the proceedings as well as the waste of the court's and respondent's time and resources. I therefore find it appropriate to reduce petitioner's counsel's fees by **50%.**

### C. Hours Expended

When evaluating fee applications, special masters need not perform a line-by-line evaluation and may instead reply on their own experience to assess reasonableness. *Wasson*, 24 Cl. Ct. 482, 484 (1993). Hours spent performing administrative tasks will not be compensated in the Program. *See e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989); *Kerridge v. Sec'y of Health & Hum. Servs.*, No. 15-852V, 2017 WL 4020523, at *3 (Fed. Cl. Spec. Mstr. July 28, 2017).

Upon review of the submitted billing statement, I find the overall hours spent on this matter appear to be reasonable. The billing entries relating to attorneys' fees appear to

accurately reflect the work that was performed, and the amount of time spent on each task was adequately documented. Additionally, respondent has not identified any entries as being objectionable, and upon review, I do not find any objectionable entries either.

Accordingly, petitioner is entitled to $24,403.00 in attorneys' fees in accordance with the deduction of 50% from the total requested amount of $48,806.00 for the reasons outline above.

### VI. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). When assessing the reasonableness of expert's fees, special masters may consider the area of expertise; prevailing rates of other experts with similar experience; education and experience; and "the nature, quality, and complexity of the information provided." *Baker v. Sec'y of Health & Human. Servs.*, No. 99-653V, 2005 WL 589431, at *3-5 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).

Petitioners request a total of $465.14 in in attorneys' costs. Fees App. The costs incurred by petitioner's counsel include a $400.00 filing fee, a $26.74 medical records fee, and a $38.40 legal research fee. Pet. Ex. C. (ECF 78). The filing fees and medical research costs are routinely reimbursed, and petitioner and petitioner's counsel have provided adequate documentation for those costs, and all appear to be reasonable. *See Constantine v. Sec'y of Health & Human Servs.*, No. 18-1685V, 2022 WL 1862726, at *3 (Fed. Cl. Spec. Mstr. May 6, 2022). Accordingly, petitioner is entitled to full attorneys' costs in the amount of $465.14.

### VII. Petitioners Costs

Pursuant to General Order No. 9, Mr. Cannon states the he has personally incurred costs of $1,926.54 in this case. Fees App. at 2; Supp Fees App. 1-5. This amount is comprised of the retrieval of medical records and petitioner has provided adequate documentation to support the costs and all appear to be reasonable. Therefore, petitioner is entitled to the full amount of petitioner's costs in the amount of $1,926.54.

### D. Conclusion

In accordance with the foregoing, Petitioner's motion for attorneys' fees and costs is **GRANTED**. I find that Petitioner's counsel is entitled to a reimbursement of attorneys' fees and costs as follows:

| | |
|---|---|
| Attorneys' Fees Requested: | $ 48,806.00 |
| (Reduction of Attorneys' Fees): | -($24,403.00) |
| **Attorneys' Fees Awarded:** | **$ 24,403.00** |
| | |
| Probate Attorneys' Fees Requested: | $2,961.36 |
| **Probate Attorneys' Fees Awarded:** | **$2,961.36** |
| | |
| Attorneys' Costs Requested: | $ 465.14 |

| | |
|---|---|
| **Attorneys' Costs Awarded:** | **$ 465.14** |
| Total Attorneys' Fees and Costs: | **$27,829.50** |

Additionally, I find that Petitioner is entitled to a reimbursement of costs as follows:

| | |
|---|---|
| Petitioner's Costs Requested: | $ 1,926.54 |
| **Petitioner's Costs Awarded:** | **$ 1,926.54** |

**Accordingly, I award the following:**

1) **A sum in the amount of $27,829.50 representing reimbursement for Petitioner's attorneys' fees totaling $24,403.00, probate fees totaling $2,961.36 and attorneys' costs totaling $465.14 in the form of a check payable to Scott W. Rooney.**

2) **A sum in the amount of $1,926.54 representing reimbursement for Petitioner's costs, in the form of a check payable to Michael Cannon, Jr.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[3]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[3] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).